Estate of Allen R. Joslin, Julia J. Joslin, Executrix v. Commissioner.
Estate of Allen R. Joslin v. Commissioner
Docket No. 6735.
United States Tax Court
1946 Tax Ct. Memo LEXIS 183; 5 T.C.M. (CCH) 410; T.C.M. (RIA) 46119; May 24, 1946
*183 Upon consideration of all the relevant factors, the fair market value, on May 28, 1941, of 3,560 shares of the common capital stock of The Andrew Jergens Company, a corporation whose stock is closely held, is fixed at $110 per share for gift tax purposes. Carl M. Jacobs, Esq., and Murray M. Flack, Esq., 2301 Union Central Bldg., Cincinnati, Ohio, for the petitioner. John H. Pigg, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves gift tax liability of $63,692.55 for the year 1941. The sole issue is the fair market value for gift tax purposes of 3,560 shares of the common capital stock of The Andrew Jergens Company on May 28, 1941. The case was submitted on oral testimony and exhibits. Findings of Fact Petitioner is the duly *184 qualified executrix of the Estate of Allen R. Joslin, deceased. On May 28, 1941, decedent, as donor, executed a trust agreement under the terms of which he transferred to the trustee, as a gift for the use and benefit of named beneficiaries, 3,560 shares of the common capital stock of The Andrew Jergens Company. The gift tax return for the year 1941 was filed with the collector of internal revenue for the first district of Ohio at Cincinnati, Ohio. On the return decedent reported the 3,560 shares as having a fair market value, on the critical date, of $249,200, or $70 per share. The respondent determined the fair market value to be $605,200, or $170 per share. The Jergens Company business was originally started about 1880. It was first incorporated under the laws of New York under the name Andrew Jergens, Incorporated. In 1901 it acquired a partial ownership of the John H. Woodbury business, which was also engaged in the manufacture of toilet soaps, creams and allied products. In 1913, The Andrew Jergens Company, an Ohio corporation, was formed as a successor to the New York corporation. In 1929, The Andrew Jergens Company acquired complete ownership of the Woodbury business, which *185 had been in existence about 75 years. In 1930, John H. Woodbury, Incorporated, was formed as a wholly owned subsidiary. Prior to 1938, both Jergens and Woodbury products were sold by Jergens-Woodbury Sales Corporation, a wholly owned subsidiary, which was dissolved in 1938. Prior to December 1, 1939, The Andrew Jergens Company owned 65.22 per cent of the Andrew Jergens Company of California, and on that date it acquired the minority interest and the two corporations were merged. During all of 1940 and 1941, the Jergens-Woodbury business was carried on by The Andrew Jergens Company (Ohio) and its wholly owned subsidiaries, viz.: John H. Woodbury, Incorporated, and Andrew Jergens Company, Ltd., a Canadian corporation, which latter company owned all the stock of John H. Woodbury, Ltd., a Canadian corporation. On May 31, 1941, the capital of The Andrew Jergens Company consisted of 3,865 shares of $100 par value of preferred stock, of which 3,626 shares were outstanding and 239 shares were held in the treasury; 84,252 shares of no par common stock, all of which was outstanding. Prior to December 1, 1939, the common stock consisted of 8,000 shares of the par value of $100 per share. On *186 that date the 8,000 shares wer called in and 80,000 new no par value shares were issued in exchange. In addition, 4,252 shares of the new stock were issued in acquisition of the minority interest in the California corporation. Of the common capital shares, approximately 90 per cent were owned by members of the Jergens family, directly or in trust; 7,000 shares were owned by the Geilfus family, and the remaining shares were held by four shareholders, two of whom owned one share each. Neither the preferred nor common shares are listed on any stock exchange, and the last known sale occurred in 1923. The common stock is carried on the books of the corporation at a stated value of $1,263,500, or $14.996 plus per share. All the products manufactured are sold under trade names. They consist mainly of Jergens lotion, soap, face powders, creams and perfumes, and Woodbury soap, cream, face powders, lipstick, rouge and other toilet and cosmetic products. The soaps are all toilet and facial soaps. About 39 per cent of the sales consist of soap and about 61 per cent, lotions and cosmetics. In addition to its plant located at Cincinnati, Ohio, the Company has a manufacturing plant at Burbank, California, *187 and one at Belleville, New Jersey. Jergens and Woodbury products are sold largely through radio, popular magazines and other forms of advertising. Radio advertising has been used since about 1925. The principal radio program, used since 1934, is the Walter Winchell program, advertising Jergens lotion on a national hookup. This program produced a substantial increase in the sales of such product. The Company had two or three other radio programs advertising Woodbury soap and creams, one of which was limited to the California territory, while the others were on national hookups. The amounts spent on advertising in the United States increased from $1,840,063 in 1935 to $3,566,667 in 1941. In the latter part of 1938, The Andrew Jergens Company acquired a site at Belleville, New Jersey, and in 1940 began the construction of a plant to manufacture cosmetics. The building was occupied by administrative personnel in January 1941. The plant was ready and used for partial operation on July 1, 1941, and full operation was started September 1, 1941. The Belleville plant was erected to afford another source of supply, particularly for the eastern market, in case of stoppage of production at *188 the Cincinnati plant because of floods, and also as part of an expansion program. The capacity of the Belleville plant was about 35 per cent of that of the Cincinnati plant. The investment in that plant to November 30, 1941 amounted to $2,013,773.31, which was financed out of current earnings. During the period 1936 to 1941, inclusive, The Andrew Jergens Company paid a regular dividend of $6 per share on its outstanding shares of preferred stock. Subsequent to 1936, dividends were paid on the outstanding shares of common stock, as follows: Shares
Amount
Year
of Common
per share
1937
8,000
$42.50
1938
8,000
50.00
1939
8,000
50.00
1940
8,000
50.00
1941
84,252
5.00
In November 1941 a dividend of $5 per share, payable in 1942, was declared. The total net worth, the tangible net worth and the per share value of the 84,252 outstanding shares of common stock per books for the years 1936 to 1941, inclusive, are shown in the following schedule: Total Net
Value per
Tangible Net
Value per
Year
Worth
Share
Worth
Share
1936
$5,064,267
$ 60.11
$4,423,776
$52.51
1937
5,323,831
63.19
4,683,340
55.59
1938
5,352,493
63.53
4,712,037
55.93
1939
6,226,624
73.90
5,586,168
66.30
1940
7,969,805
94.59
6,991,749
82.99
1941
8,847,637
105.01
7,869,581
93.40
*189 The tangible per share book value, as shown by the books as of May 31, 1941, was $89.16. The gross sales, the net profits after taxes, and net earnings per share per books on the common stock for the years 1936 to 1940, inclusive, are as follows: Net Profit
After Taxes
Net Earnings per
Total
Available for
Share on
Year
Gross Sales
Common
Common
1936
$10,515,017
$ 894,149
$11.18
1937
11,026,785
600,443
7.51
1938
11,459,962
567,792
7.09
1939
13,610,666
1,279,898
16.00
1940
14,944,196
1,618,330
20.00
The average net earnings per share for the five-year period, 1936-1940, inclusive, was $12.37. In the year 1937, The Andrew Jergens Company sustained a loss of $339,365.69 by reason of the Ohio River flood in that year. Although several times in the past 30 years the Company has suffered losses from similar floods, the 1937 loss was considerably greater than the damage suffered in any prior year. Prior to 1938, it had been the policy of the Jergens-Woodbury Sales Corporation to regularly accrue the advertising expenses of the most recent two months, which accrual was carried on the balance sheet as a deferred charge. The *190 expense was accrued because the Company believed the effectiveness of the advertising carried over into the following year. In 1938 the sales corporation was dissolved and it was decided to charge to expense all the advertising that had been done up to the end of that year. This necessitated charging off $328,384.28, which had been carried over from the previous year. As a result the selling expense for the fiscal year includes advertising expenditures for 14 months. As a consequence of these unusual circumstances the net earnings per share for the years 1937 and 1938 were accordingly reduced. The fair market value of the 3,560 shares of the common stock of The Andrew Jergens Company, on May 28, 1941, was $391,600, or $110 per share. Opinion The issue presented is the fair market value, on May 28, 1941, of 3,560 shares of the common capital stock of The Andrew Jergens Company for gift tax purposes. That company was a close corporation. Its shares were not listed on any stock exchange, and the last known sale was in 1923. In addition to the financial data of the corporation the testimony consists of the opinions of two experts presented in behalf of each of the contestants. Petitioner's *191 experts gave support to the valuation of $70 per share, at which value the shares had been returned for taxation. The respondent's experts fixed the value at $125 per share, although respondent had determined the deficiency on a valuation of $170 per share. The methods of approach and the formulas used by the respective experts were so dissimilar as to furnish us little aid in our determination of the question presented. Nor would it be helpful to attempt to reconcile their respective viewpoints. As to valuing the stock of a close corporation whose shares are unlisted and without evidence of any sale within a reasonable period, Treasury Regulations 108, sec. 86.19-(c), so far as material, provides: If actual sales on bona fide bid and asked prices are not available, then * * * in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. * * * The parties are in disagreement as to the respective weight to be given the specific factors mentioned in such regulations. We have given to each factor, however, such weight as, in our judgment, the surrounding *192 circumstances in this particular case required. Factors relevant in our judgment, other than those specified, were also considered. These other factors included the nature of the business, the history of the company, the character of its management, the competitive risks, and its future prospects. It is our judgment, giving consideration to all relevant factors, and we have, therefore, found as a fact, that the shares of common stock of The Andrew Jergens Company on the critical date, May 28, 1941, had a value of $110 per share for gift tax purposes. Decision will be entered under Rule 50.